Parker, J.
These are actions of contract in which the plaintiff seeks to recover in the first case from the defendant individually, and in the second case from the defendant as guardian of Emile J. Picard, on two respective promissory notes as set forth in an Agreed Statement of Facts.
The answers in both cases are identical and consist of: (1) general denial; (2) denial of signatures on said notes; (3) plea of payment; (4) no consideration; (5) illegality.
Both cases were submitted on a statement of agreed facts, which was approximately as follows:
In October of 1932, William J. Picard, Wilfred J. Picard together with their brothers, Albert A. Picard, George A. Picard, and Emile J. Picard, their sister, Aurora Maguranis, and their stepfather, Joseph Picard, were the heirs and next of kin of Leontine Picard; William H. Eppinger was the agent appointed in writing by all said heirs as manager of the properties of the Leontine Picard Estate. At a meeting on the last Sunday in October 1932, called by *427 Mr. Eppinger, the agent, at the home of William J. Picard, notice of which was sent to all 'members of the Picard family, William, Wilfred and Albert met with Mr. Eppinger'. The stated purpose of the meeting was to hear a report to date, to consider the payment of taxes amounting to $1150, to receive suggestions and to transact new business that may be brought up for the benefit of the estate. At that meeting it was represented to Mr. Eppinger by said William, Wilfred and Albert that William was in need of funds in the amount of $750; that Wilfred and Albert were willing that Mr. Eppinger should advance said sum from the estate funds to said William; that William’s interest in the estate was adequate protection; that William would sign a demand note for said amount with interest at the rate of six per cent per annum, and mention in the note the fact that his share of the estate was collateral. Joseph Picard, the stepfather, did not know in advance of this plan.
Effective as of October 31, 1932, a demand note for $750 was executed by said William, payable to said Eppinger, as agent of the Leontine Picard Estate, with interest at six per cent per annum, and mentioning William’s share of the estate as collateral for the note. Mr. Eppinger accepted the note, and drew a check on the agency funds for $750 payable to said William. When the check was returned by the bank to Mr. Eppinger, he noted that in addition to the endorsement of William, the check also bore the endorsement of the brother, Albert. After William received the check, he endorsed and turned it over to Albert, who, in pursuance of a prearranged plan for distribution of the proceeds, issued a check in the sum of $150 to each of the following: William J. Picard; Wilfred J. Picard; Albert A. Picard; Wilfred J. Picard, as guardian of Emile J. Picard; and Aurora Maguranis. The sister, Aurora Maguranis; the agent, William H. Eppinger; and the stepfather, Joseph *428 Picard did not know of this plan for distribution; and the stepfather did not share in it. At the time the brother, Albert, distributed the money, four notes in the amount of $150 each were given by Wilfred J. Picard, Albert A. Picard, Wilfred J. Picard as guardian of Emile A. Picard, with interest at six per cent per annum. Said Albert and Aurora paid their respective notes.
After the agent learned the true nature of the transaction, he sought many times to secure payment of the seven-hundred-and-fifty-dollar note by said William without avail, until in January 1937 when William paid to the agent of the estate the sum of $750 together with four years ’ interest amounting to $180. He had obtained this money from the agent, who advanced the amount personally and took a mortgage of William’s interest in his mother’s estate as security.
Later John H. Matthews was appointed commissioner in partition proceedings brought in the Leontine Picard Estate to sell real estate. It is agreed that proper distribution of the assets of said estate in the hands of the agent and the commissioner has been made to all the heirs, except that the share of said Wilfred individually and as guardian of Emile is still in the hands of said commissioner under an injunction allowed by the Probate Court. It is further agreed that the agency account and the estate have been fully compensated for the advance of $750. Prior to 1937, said G-eorge A. Picard had sold his estate interest to the other heirs of Leontine Picard; prior to 1937, said William H. Eppinger had acquired the estate interest of said Albert A. Picard. It is also agreed that if there should be a finding for the plaintiff in either case, the amount of the finding shall be for the sum of $234.75. in .each case.
The two one-hundred-and-fifty-dollar notes, payable.to. the plaintiff by the defendant personally and as guardian, *429 with six per cent interest, dated October 31, 1932, are identical in content and bear the inscription, “Collateral my share in Leontine Picard Estate”; payable on demand.
At the close of the trial and before arguments, the defendant made eleven requests for rulings, all of which the Trial Justice refused (denied). The requests were substantially as follows: The first, second and sixth deal with the subject of “pari delicto” as it concerns the plaintiff and the defendant, and in the second request as it also concerns the agent. The third request refers to the note as “a mere paper transaction”; and fifth as “a colorable transaction”; and the seventh as “a colorable transaction and a paper transaction”. The fourth and ninth requests state that no consideration was given for the note. The eighth calls attention to the fact that nothing was paid on the principal or interest from October 1932 to January 1937, at which time the agent paid back personally the principal and interest and took a mortgage from the plaintiff, which leads to the inference that the original note and check of $750 were “a nudum pactumThe tenth request states that the writing on the note “Collateral my share in the Leontine Picard estate is meaningless and is of no legal effect”. The eleventh request is as follows: “Upon all the evidence, and the reasonably drawn inferences therefrom, the plaintiff is not entitled to recover.”
The Trial Court filed the following Memorandum of Findings :
“On the agreed statement of facts filed in the above entitled cases, I find for the plaintiff in each of the said cases in the respective sum of $234.75 which is the sum agreed to be found in each of the said cases, as set forth in said agreed statement of facts if there was a finding for the plaintiffs. Under the said agreed statement of facts and the above finding thereon, I refuse all of the defendant’s requests for rulings filed in each of the said cases. ’ ’
*430 On the agreed statement of facts filed in the above entitled cases and set forth in detail supra, it is evident that the issues in both cases are the same. The first issue is that of consideration. It is agreed that each of these demand notes was for one hundred and fifty dollars; and that the defendant received the full amount of one hundred and fifty dollars on each note. The fact that the brother, Albert A. Picard, gave Wilfred checks for the one-hundred-and-fifty-dollar amounts was a mere incident of convenience. Albert was the only one of the brothers who had a regular bank checking account, and for the convenience of the interested parties he deposited the seven hundred and fifty dollars received from the agent and issued checks therefor to all of the heirs except to Joseph Picard, the uncle and stepfather of the children. The original note of seven hundred and fifty dollars was given by William J. Picard to the agent of the estate; William was the only one held responsible by the agent for the payment of the seven hundred and fifty dollars and he was the one who eventually paid the seven-hundred-and-fifty-dollar note in full. General Laws of Massachusetts (Ter. Ed.), Chapter 107, Sections 47 and 48 read as follows:
‘1 Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value. ’ ’
“Value is any consideration sufficient to support a simple contract.”
We find satisfactory consideration for both notes.
The second issue is that of the illegality of the entire procedure of the brothers, William, Wilfred and Albert in their dealings with the agent of their mother ’s estate. There seems to be little doubt but that the agent was deceived by the request of William for a loan of seven hundred and *431 fifty dollars to relieve William’s financial stringency, in which Wilfred and Albert co-operated and of which the uncle and stepfather was wholly ignorant. Although there may have been a fraudulent intent at the inception of the affair and although the agent was deceived and embarrassed by the entire proceeding, in the final outcome, with the distribution of the estate, none of the interested parties suffered any financial loss whatever. Certainly the defendant, Wilfred J. Picard, both individually and as Guardian of Emile A. Picard, received his fair shares in the distribution of the estate, subject to the injunction which was -placed upon the Commissioner who had charge of the distribution of the estate. If Wilfred as a defendant is to be excused from paying these two notes while the other interested heirs have already liquidated similar claims and William has paid in full the seven-hundred-and-fifty-dollar note which he gave to the agent, then it will result in the undue and unfair enrichment of Wilfred and to the great disadvantage of William. Wilfred was an active participant in the plant at the beginning and ought not to be permitted at this time to take advantage of his illegal act to the great disadvantage of other parties who have certainly purged themselves of all illegality by their later conduct. White vs. Franklin Bank, 22 Pickering 186; Corpus Juris, Vol. 13, Page 505; Restatement of the Law, Section 601, Illustration 6, Contracts.
We find nothing to criticize in the refusal by the Trial Judge of all the defendant’s requests for rulings. There being no prejudicial error, we order the report dismissed.